UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60926-CIV-COHN/SELTZER

RHODA KANE,

      Plaintiff,

v.

ERIN PARK AUTOMOTIVE PARTNERSHIP
d/b/a ERIN PARK LEXUS AND ERIN PARK
TOYOTA and JOEL COHEN,

      Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment [DE 4]. The Court has considered the Motion, the parties' related submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

This action arises out of an incident that took place in a restaurant parking lot on January 1, 2008. Plaintiff and her friend were walking towards the restaurant when they observed Defendants' automobile backing up towards them.[1] Plaintiff submitted an Affidavit, which states the following: "I fell in the parking lot at the Cheese Cake Factory in Boca Raton, Florida while trying to avoid being hit by a vehicle that was backing up towards me and was within 5 feet of me." DE 21-4 ¶ 3. As a result of the fall, Plaintiff claims she fractured her right femur. Neither Plaintiff nor Ms. Levey, Plaintiff's friend,

---

[1] The automobile was owned by Defendant Erin Park Automotive Partnership d/b/a Erin Park Lexus and Erin Park Toyota and operated by Defendant Cohen on the night of the incident.

could say how fast the vehicle was moving as it backed up; nor could they say how far the vehicle backed up. See DE 4-3 at 66:25-67:6; DE 4-1 at 123:10-22, 135:16-20.

In response to an interrogatory, Mr. Cohen explained that on January 1, 2008, he pulled his car in front of the stairs leading to the restaurant in order to let his four passengers exit. See DE 4-4. After the passengers exited the vehicle, Mr. Cohen noticed that a car was leaving a parking spot to his left. Id. Mr. Cohen describes the ensuing incident as follows:

> In order to park in this spot it was necessary to back my car a couple of feet before moving forward and to the left. As I waited for the car to vacate the parking spot, I checked my mirrors and blind spots and did not see anyone near the back of my vehicle. I then put the vehicle in reverse and the screen of the back-up camera confirmed that nobody was behind my vehicle. Seeing that nobody was in my path, I then removed my foot from the brake and let the vehicle back up two to three feet under its own power. I did not touch the gas. Then I put the vehicle in drive and parked in the empty parking space to my left. The vehicle was equipped with rear sensors, which never went off while I was reversing or parking, and there was no one close to my vehicle while I was reversing.

Id. When Mr. Cohen exited the vehicle, "an elderly lady approached [him], yelling at [him], and accusing [Mr. Cohen] of not paying attention to where [he] was going." Id. Plaintiff testified that when she got up, she "[w]ent right over to Mr. Cohen and asked him why weren't you looking where you where going?  Why didn't you blow your horn?  Why don't you look how you drive?  You were going to hit me if I hadn't gotten out of your way." DE 4-1 at 139:8-14.

After the incident, the police and paramedics were called. Plaintiff refused medical treatment and stated that she was not injured. See, e.g., DE 4-5 at 12:4-6. The next day, Plaintiff called her physician, Dr. Zann, and made an appointment for January 3, 2008. See DE 21-4 ¶¶ 5-6. At that time, x-rays were taken of the Plaintiff's

leg. Dr. Zann determined that the x-rays demonstrated a transverse fracture of Plaintiff's right femur. DE 21-5 ¶ 10. Dr. Zann stated that "[a] transverse fracture is usually the result of a blunt trauma and at this location would be consistent with a fall to or on the leg, knee or hip area." Id. ¶ 11. Dr. Zann also testified that the only way to determine with "absolute certainty" that Plaintiff's injury resulted from the incident described above "would be to compare x rays taken immediately before the fall with x rays taken immediately after the fall. Clearly no such x rays exist." Id. ¶ 13. However, Dr. Zann stated that it is his opinion, "with a reasonable degree of medical probability," that absent any other blunt traumas to Plaintiff's femur between x rays previously taken on November 14, 2007 and those taken on January 3, 2008, the fall was the cause of Plaintiff's transverse fracture. Id. Plaintiff testified that other than the fall on January 1, 2008, she "did not have any falls or injuries to [her] femur or hip since [her] last visit to Dr. Zann's office of November 14, 2007." DE 21-4 ¶ 12.

## II. LEGAL STANDARD

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When deciding a motion for summary judgment, a district court must consider all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and must resolve all reasonable doubts against the moving party." Corbitt v. Home Depot U.S.A., 573 F.3d 1223, 1238 (11th Cir. 2009). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of  Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### 1.   The Questions of Whether Plaintiff Was in a Position of Peril and Whether Defendant Was Negligent Are Disputed Issues of Fact

Defendants argue that Plaintiff's conduct constituted an "exceptional reaction" to Defendant Cohen's navigation of the automobile.  DE 4 at 9.  Therefore, Plaintiff's

reaction and ensuing injury were unforeseeable. According to Defendants, "Plaintiff's decision to run from a slowly-reversing vehicle that never entered the area that she occupied was 'strange' indeed. Not only did Defendants have no legal obligation to anticipate and protect against this reaction, under [Pope v. Cruise Boat Co., 380 So. 2d 1151 (Fla. 3d DCA 1980)], Plaintiff's response constituted an intervening and supervening cause of her fall 'for which the defendants are not responsible.'" Id. at 11.

In response, Plaintiff contends that Defendants are "essentially arguing that as 'a matter of law' a driver of a vehicle and its owner cannot be held liable, under Florida law, for physical injury suffered by a pedestrian who attempts to get out of the way of a negligently operated vehicle and suffers bodily injury in the process, because the reaction of a fleeing pedestrian is somehow not reasonably foreseeable." DE 21 at 2. Plaintiff cites Lowd v. Cal Kovens Constr. Corp., 546 So. 2d 1087, 1090 (Fla. DCA 1989), for the proposition that "it is reasonably foreseeable that a pedestrian, in attempting to avoid being hit by a negligently driven vehicle, might suffer injuries." Id. Accordingly, Plaintiff argues that "[i]t is difficult to understand . . . how the defendants can maintain the position that Plaintiff's attempt to get out of harm's way is 'unforeseeable' as a matter of law." DE 21 at 4.

Defendants' Reply asserts that "Plaintiff still cannot point to any evidence demonstrating that the Defendants ever put her in an actual 'position of peril' – which is a prerequisite to recovery under" Lowd. DE 23 at 1. Defendants argue that Plaintiff is relying on an extension of Lowd to "situations where a plaintiff is in no actual peril but still manages to hurt herself." Id. at 2. "The extension proposed by Plaintiff would permit any injured person to get to a jury by the simply expedient of saying that she was

<u>subjectively</u> startled by the conduct of another prior to injuring herself – regardless of whether there is proof that the other person actually did anything wrong." <u>Id.</u>

Defendants make a strong argument. Plaintiff attempts to discredit Defendants' position by distorting it. Plaintiff argues that it is foreseeable that an individual may be injured while attempting to escape a position of peril created by a negligently driven vehicle. However, Defendants are arguing that (1) the Plaintiff was never in a position of peril; and (2) Defendant Cohen was not negligent in his operation of the vehicle. Nevertheless, viewing all facts in the light most favorable to Plaintiff, the Court concludes that these two issues cannot be decided as a matter of law and must be decided by a jury.

Defendants argue that based on this ruling, a plaintiff will be able to get to a jury simply by saying that "she was subjectively startled" by a defendant's conduct. DE 23 at 1. Here, Plaintiff has testified that she believed she was in danger and she also took contemporaneous actions that were consistent with this belief. That is, she ran to avoid the vehicle and immediately took issue with Defendant Cohen's operation of that vehicle. Moreover, it is the province of the trier of fact to determine the credibility of Plaintiff's statements and evaluate whether or not her actions were reasonable under the circumstances. In addition, accepting Defendants' position would present the possibility of allowing a defendant to avoid a jury trial based on his own subjective belief that he acted with reasonable care.

A negligent actor "is not absolved of liability when his conduct 'sets in motion' a chain of events resulting in injury to the plaintiff." <u>Gibson v. Avis Rent-A-Car Sys., Inc.</u>, 386 So. 2d 520, 522 (Fla. 1980). "If an intervening cause is foreseeable the original

negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." Id. Therefore, a jury must determine whether Plaintiff was in a position of peril.

"Whether a defendant has exercised reasonable care in a particular situation is an issue to be determined by the trier of facts." Travelers Ins. Co. v. Securitylink from Ameritech, Inc., 995 So.2d 1175, 1178 (Fla. 3d DCA 2008) (citing Whitt v. Silverman, 788 So.2d 210, 220 (Fla. 2001); Evans v. S. Holding Corp., 391 So.2d 231, 233-34 (Fla. 3d DCA 1980) (Schwartz, J., dissenting); Holley v. Mt. Zion Terrace Apartments, Inc., 382 So.2d 98, 100-01 (Fla. 3d DCA 1980)). "[T]he determination of whether reasonable care has been exercised in a specific situation is just what juries do and what, under our system, they are for." Whitt, 788 So.2d at 220. Accordingly, it is for the jury to determine whether or not Defendant Cohen exercised reasonable care.

### 2. The Question of Whether Plaintiff's Injury Was Caused by the Fall is a Disputed Issue of Fact

Defendants argue that there is no conclusive evidence to establish that Plaintiff broke her right femur as a result of her fall on January 1, 2008. Defendants state that Plaintiff "conceded that she could not say this fracture did not pre-exist her fall and deferred to Dr. Zann." DE 4 at 13. Dr. Zann did not provide testimony to pinpoint precisely when the injury occurred. Instead Dr. Zann testified that the injury occurred "somewhere between the November visit and the January 3 visit." DE 4-2 at 75:15-18. According to Defendants, "Dr. Zann's testimony only establishes a possibility that Plaintiff's fracture occurred as a result of her January 1, 2008 fall and, as such, Plaintiff failed to meet her burden of proof and summary judgment is proper." DE 4 at 14.

Plaintiff submitted a sworn Affidavit of Dr. Zann in connection with its Opposition

to Defendants' Motion. There, Dr. Zann states that it is his "opinion, within a reasonable degree of medical probability [that] absent any other blunt traumas that caused pain to Ms. Kane's femur . . . that the fall, as described by the [Plaintiff] . . . was the cause of Ms. Kane's transverse fracture." DE 21-5 ¶ 13. Plaintiff testified that other than the fall on January 1, 2008, she "did not have any falls or injuries to [her] femur or hip since [her] last visit to Dr.. Zann's office of November 14, 2007." DE 21-4 ¶ 12.

The Court concludes that Plaintiff has pointed to sufficient evidence in the record to create a disputed issue of fact regarding whether her transverse fracture was caused by the January 1, 2008 fall. Accordingly, summary judgment must be denied.

### IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 4].

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 10th day of December, 2009.

*/s/ James I. Cohn*
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

8